IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| **FERNANDO RANGEL,** : | |
| : | No. 5:13-cv-00843 |
| Plaintiff, : | |
| : | |
| vs. : | **CLASS ACTION** |
| : | |
| **CARDELL CABINETRY, LLC,** : | |
| : | **JURY TRIAL DEMANDED** |
| Defendant. : | |

**CLASS ACTION COMPLAINT**

Plaintiff Fernando Rangel ("Plaintiff") on behalf of himself and all similarly situated persons, alleges as follows:

**PRELIMINARY STATEMENT**

1. This case arises out of the collapse of Cardell Cabinetry, LLC ("Cardell" or "Defendant"). On September 9, 2013, Cardell closed its doors without advance warning to its employees, immediately leaving approximately 900 workers unemployed. This action is brought as a result of Cardell's failure to provide its workers with the notification required under the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, *et seq.* (the "WARN Act"), and to recover appropriate relief to remedy this violation.

2. Through this action, Plaintiff and other similarly situated employees of Defendant seek damages in the amount of sixty (60) days

pay and benefits, by reason of Defendant's violation of the Plaintiff's rights under the WARN Act. Plaintiff and Class Members were employees of Cardell, and were terminated as part of a mass layoff and/or plant closing ordered by Defendant. Cardell violated federal law by failing to give Plaintiff and other similarly situated employees of the Cardell sixty (60) days notice as required by such laws. Plaintiff also assets claims under state law for breach of express and implied contract to recover the full monetary value of their accrued vacation time, and other employment benefits that have now been lost.

## THE PARTIES

3.      Plaintiff is a former Cardell employee who worked at the San Antonio Facility that closed on September 9, 2013. Plaintiff has been injured as a result of Cardell's conduct as alleged herein.

4.      Defendant, Cardell Cabinetry, LLC (hereinafter "Cardell") is a privately owned Delaware Limited Liability Company with a principal place of business located at 3215 N. Pan Am Expressway San Antonio, Texas 78220. The closed factory at issue in this litigation (the "San Antonio Facility"), which qualifies for protection under the WARN Act, is also located at that address.

## JURISDICTION AND VENUE

5.  This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this case is being brought under the WARN Act, 29 U.S.C. § 2101 *et seq.*

6.  The Court also has supplemental jurisdiction over the state law claims asserted herein, pursuant to 28 U.S.C. § 1367.

7.  Venue is proper in this District because Defendant resides in this District, the San Antonio Facility is located in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

**A.  The Rise and Fall of Cardell.**

8.  Defendant Cardell was an entity that manufactures custom and semi-custom kitchen cabinets. The company had been acquired by Bill Tidwell in May of 1977. According to Cardell's website, one of the reasons that Mr. Tidwell acquired the company was because he "knew the job market in San Antonio was good."[1]

---

[1] http://www.cardellkitchens.com/history.htm <last visited on September 12, 2013>.

9. Cardell's website states that Mr. Tidwell still owns the company, and "other Tidwell family members remain extremely active in management, day-to-day operations and leading the company towards an exciting future."[2] Another report, however, indicates that "Tidwell no longer oversees Cardell. Miami, Fla.-based H.I.G. Capital, a private equity firm, took control after investing in the company in late 2010."[3]

10. Cardwell's website states that "[o]ver the next decade [after Mr. Tidwell acquired Cardell, the company] expanded from Texas into the national market. Cardell was able to do this by sticking to Mr. Tidwell's vision, the hard work of dedicated employees, and by building strong and lasting relationships with its distributors."[4]

11. Cardell claims to have over 900,000 square feet of work space between its San Antonio manufacturing facilities, and a secondary manufacturing facility located in El Campo, Texas.[5] At its peak, Cardell was reportedly manufacturing 8,000 cabinets per day, and employed more than

---

[2] *Id.*

[3] http://www.expressnews.com/news/local/article/Big-employer-on-E-Side-closing-4795707.php <last visited September 13, 2013>. Plaintiff reserves the right to amend the complaint to add additional parties as defendant(s), as appropriate.

[4] *Id.*

[5] It has been reported that Cardell closed its El Campo facility several years ago. *See id.*

3,000 workers.[6] The size (and production output) of the company gradually declined as new orders from construction companies fell. At the time of its recent demise, Cardell had approximately 900 employees and was reportedly producing fewer than 2,500 cabinets a day.[7]

12. There was no public indication that Cardell was in financial distress, or that any of its facilities were at risk of imminent closure. To the contrary, Cardell boasts of having been ranked "one of the largest manufacturing businesses in San Antonio for the last decade."[8] Its website further states that Mr. Tidwell has, "over the past 30 years…grown the company into one of the largest privately owned cabinet manufacturers in the country."[9]

13. Despite the lack of any public warning signs about the closure of the San Antonio Facility, it is readily apparently that this inevitable event had been reasonably foreseeable to Defendant (a non-public company) for some time. It has been reported that the shut-down of the San Antonio facility was brought about as a result of a combination of the housing market recession, and Cardell owing more than $15 million to unsecured creditors and approximately $30 million to other lenders. Indeed, a lawyer

---

[6] *Id.*
[7] *Id.*
[8] http://www.cardellkitchens.com/history.htm.
[9] *Id.*

for Cardell reportedly told the *San Antonio Express-News* that the company was closing because of the housing slump of recent years as well as a $45 million debt.[10] In light of its deteriorating financial condition and mounting debt, Cardell was reportedly "put in receivership late last month."[11]

      14.    Over the course of the weekend on September 7-8, 2013, Defendant began making automated phone calls to some, but not all, of its employees to vaguely inform them that the plant would be closed the following day. The pertinent text of this audio recording is set forth below:

> We regret to inform you that Cardell Cabinetry will close and no longer operate as of Sunday, September 8th. Employees should not report to work for their normal shifts on Monday except for a small number of employees who will be contacted separately and asked to help the Company in its wind down of operations. We realize that this news may be unexpected. The Company and its lender have been working to support ongoing operations and continued serving Cardell's customers. Unfortunately it is now clear that Cardell can no longer stay in business. All Cardell employees will be paid for work through Saturday, September 7th. Final paychecks will be mailed to each employee's address that is on file with the Company. Again, please do not report for work on Monday unless you are specifically told to do so. Unauthorized employees will not be allowed to enter the facility. However, if you contact us beforehand we will arrange a time when you can pick up your personal items. We greatly appreciate your work and support of the Company and its customers. We appreciate your

---

[10] http://www.ksat.com/news/san-antonio-cabinet-company-suddenly-shuts-down/-/478452/21846242/-/417rrlz/-/index.html <last visited September 13, 2013>.
[11] < http://www.woodworkingnetwork.com/wood-market-trends/woodworking-industry-news/production-woodworking-news/Cardell-Cabinetry-Out-of-Business-223135881.html#sthash.JqPzlXYU.dpbs> (last visited September 13, 2013>.

H0028699.                      6

understanding and acceptance of this news and wish you all the best for the future.  Thank you.

15.  As this recording acknowledges, Cardell's employees are only being provided with their "final paycheck" for their work through September 7; they are not being fully compensated for Cardell's blatant violation of the WARN Act.

16.  Cardell's attorney, Howard Marc Spector, has also publically acknowledged that this audio message was not even disseminated to "many employees" because they "did not have a current phone number on file with the company."[12]

**B.   The San Antonio Plant Closure on September 9, 2013.**

17.  On Monday morning, September 9, 2013, Cardell's employees began showing up for work at the San Antonio Facility at about 6 a.m. to start the work-week.  When they arrived at the factory, however, employees were shocked to discover that the plant was closing.

18.  Locked gates lined the perimeter of the facility, and prevented employees from entering.  The entrance was also reportedly staffed by guards.  According to one news report, "[s]ecurity chased many workers

---

[12] http://www.ksat.com/news/cardell-cabinetry-closing-catches-workers-by-surprise/-/478452/21852722/-/r3sfglz/-/index.html.

away and ordered everyone to stand behind cones off property."[13]  Police officers subsequently were called to the scene to clear traffic.

19.   Neither Plaintiff nor Class Members received any advance notice or warning that the plant was closing – aside from those who may have received Defendant's automated voice messages over the preceding weekend.  A local report confirms that Cardell "reportedly shut down Monday morning without notifying many of its 900 employees."[14]

20.   One employee, Joel Verastegui – who spent the last 12 years working for Cardell – told a reporter that he was blindsided by the closing. "They didn't say nothing, not to come in or nothing. That's kind of a sad way to do it,"…. "I guess we have to live with it." Mr. Verastegui said.[15]

21.   Mr. Spector reportedly said that "[t]hese are unfortunate circumstances, but the harsh reality is that the company cannot sustain itself and meet its business and financial obligations."[16]  Mr. Spector also

---

[13] http://www.ksat.com/news/san-antonio-cabinet-company-suddenly-shuts-down/-/478452/21846242/-/417rrlz/-/index.html <last visited September 13, 2013>.
[14] *Id.*
[15] http://www.ksat.com/news/cardell-cabinetry-closing-catches-workers-by-surprise/-/478452/21852722/-/r3sfglz/-/index.html <last visited September 13, 2013>.
[16] http://www.expressnews.com/news/local/article/Big-employer-on-E-Side-closing-4795707.php <last visited September 13, 2013>.

indicated that "Cardell has not sought bankruptcy protection. 'At this point, I don't have any reason to think that it will.'"[17]

22.   In another report, Mr. Spector said "we will start coordinating the retrieval of personal property by employees probably next week, in small groups, by prior appointment."[18]

### C.   Cardell's Violation of the WARN Act.

23.   Plaintiff and those he seeks to represent herein were discharged without cause on their part on or about September 9, 2013, as the reasonably foreseeable consequence of the mass layoff or plant closing ordered by Cardell, and are "affected employees" within the meaning in 29 U.S.C. §210l(a)(5).

24.   Plaintiff brings this action on his own behalf, pursuant to the WARN Act, and on behalf of all other similarly situated employees and former employees whose employment was terminated on or about September 9, 2013.

25.   Cardell terminated Plaintiff's employment as part of a mass layoff or plant closing as defined by 29 U.S.C. § 2101, for which

---

[17] *Id.*
[18] http://www.ksat.com/news/cardell-cabinetry-closing-catches-workers-by-surprise/-/478452/21852722/-/r3sfglz/-/index.html.  <last visited September 13, 2013>.

Plaintiff was entitled to receive sixty (60) days advance written notice under the WARN Act.

29. Cardell, as a single employer, did not give Plaintiff the statutorily required sixty (60) days notice of the mass layoff or termination in violation of the WARN Act.

30. Plaintiff and Class members were discharged by Cardell without cause on their part, and are "affected employee(s)" within the meaning of the WARN Act 29 U.S.C. §2101(a)(5).

26. Upon information and belief, Defendant Cardell maintains a vacation policy that applies to all of its employees. Through that vacation policy, Plaintiff and other employees accrued vacation as they worked for Defendant Cardell.

27. Upon information and belief, Defendant Cardell failed and refused to pay all employees, including Plaintiff, for their accrued and unused vacation at the time of employment termination.

28. Plaintiff also seeks to recover any other accrued benefits to which he and Class members are entitled as a result of Defendant's conduct, including without limitation, any health insurance benefits and/or any retirement or 401(k) benefits.

## CLASS ACTION ALLEGATIONS

33. Plaintiff sues under Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Proposed Class:

> All persons employed at Cardell's San Antonio Facility who were involuntarily terminated as a result of Defendant's September 9, 2013 plant closure.

34. Numerosity: The Proposed Class is so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that there are several hundred class members.

35. Typicality: The Plaintiff's claims are typical of the members of the Proposed Class. Plaintiff, and proposed class members, were involuntarily terminated by Cardell without proper notice under the WARN Act.

36. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Many of the class members are low income persons whose primary language is Spanish, and who would have no other recourse aside from this class action.

37. Adequacy: Plaintiff and his counsel will fairly and adequately protect the interests of the Class. Counsel for Plaintiff has extensive experience successfully representing plaintiffs in complex class action litigation across the country.

38. Commonality: Common questions of law and fact exist to all members of the Proposed Class and predominate over any questions solely

affecting individual members of the Proposed Class, including but not limited to whether:

    a. Defendant was a covered employer under the WARN Act;

    b. all class members were protected under the WARN Act;

    c. all class members' employment locations were covered facilities under the WARN Act;

    d. Defendant acted as a single employer in terminating class members' employment;

    e. Defendant failed to provide at least sixty (60) days advance written notice to the class members, as required by the WARN Act;

    f. Defendant failed to pay the class members wages and to provide other employee benefits for the 60-day period following their respective terminations; and

    g. Defendant failed to pay or compensate class members for their accrued vacation time.

39. This case is maintainable as a class action under FED. R. CIV. P. 23(b)(1) because prosecution of actions by or against individual members of the Proposed Class may result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Cardell.

40. This case is maintainable as a class action under FED. R. CIV. P. 23(b)(2) because Cardell has acted on grounds that apply generally to the Class, such that final injunctive relief or corresponding declaratory relief is appropriate as to the entire Class.

41. Class certification is also appropriate under FED. R. CIV. P. 23(b)(3) because questions of law and fact common to the Proposed Class predominate over any questions affecting only individual members of the Proposed Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. In addition, class certification is superior because it will avoid the need for unduly duplicative litigation that might result in inconsistent judgments about Cardell's practices.

42. Further, class action treatment of this action is authorized and appropriate under the WARN Act, 29 U.S.C. § 2104(a)(5), which clearly provides that a plaintiff seeking to enforce liabilities under that statute may sue either on behalf of his or her self, for other persons similarly situated, or both.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF THE WARN ACT

34. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

54. At all times material herein, Plaintiff, and similarly situated persons, have been entitled to the rights, protections, and benefits provided under the WARN Act, 29 U.S.C. § 2101 *et. seq.* Plaintiff and members of the Class are "affected employees" of Cardell within the meaning of 29 U.S.C. §2101(a)(5).

55. Cardell was an "employer" as that term is defined in 29·U.S.C. § 210l(a)(l) and 20 C.F.R. § 639.3(a) and continued to operate as a business until deciding to order a mass layoff or plant closing at the Facilities. Cardell employed more than 100 employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States.

56. On or about September 9, 2013, Cardell ordered a "mass layoff" or "plant closing" of the San Antonio Facility, as those terms are defined in 29 U.S.C. § 2101(a)(2),(3).

57. Plaintiff is informed and believes and thereon alleges that the mass layoff or plant closing at the Facilities resulted in "employment losses," as that term is defined by 29 U.S.C. § 210l(a)(2) for at least 50 of Cardell'

employees as well as 33% of Cardell's workforce at each of the Facilities, excluding part-time employees as that term is defined by 29 U.S.C. § 210l(a)(8).

58. Plaintiff and each of the other members of the Class were discharged by Cardell without cause on their part.

59. Cardell failed to give Plaintiff and other members of the Class written notice that complied with the requirements of the WARN Act.

60. Plaintiff and each of the other Class members are "aggrieved employees" of Cardell, as that term is defined in 29 U.S.C. §2104(a)(7).

61. Cardell failed to pay Plaintiff and each of the Class members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation pay for 60 days following notice of their terminations and failed to pay accrued retirement benefits, for 60 days following notice of their respective terminations.  Plaintiff has been injured as a result of these WARN Act violations.

62. Cardell is also liable to Plaintiff for reasonable attorneys' fees under 29 U.S.C. § 2104.

## SECOND CLAIM FOR RELIEF
## BREACH OF EXPRESS CONTRACT

63. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

64. Plaintiff and had a contract, such that he was entitled to a certain amount of accrued vacation time every year.

65. Upon information and belief those contracts required Defendant to pay employees all accrued vacation time at the time of termination of employment. Defendant breached the contract by failing to do so, thus entitling Plaintiff and Class Members to damages.

### THIRD CLAIM FOR RELIEF
### BREACH OF IMPLIED CONTRACT

66. Plaintiff incorporates by reference the allegations in the preceding paragraphs. This count is pled in the alternative to the breach of express contract claim pursuant to FED. R. CIV. P. 8(d)(2).

67. The dealings of the parties show that the minds of the parties met on the terms of an agreement, such that Plaintiff and Class Members were entitled to compensation for their unused, accrued vacation time and other accrued benefits. Defendant breached the contract by failing to do so, thus entitling Plaintiff and Class Members to damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and all members of the Class, request the following relief:

A. That the Court determine that this action may be maintained as a class action under Federal Rule of Civil Procedure 23;

B.  That Cardell is found to have violated the provisions of the WARN Act as to Plaintiff and the WARN Class;

C.  For an award, of damages or in equity, in the amount of unpaid compensation, vacation and other benefits owed Plaintiff and Class Members.

D.  An award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 2104, District of Columbia Code § 32-1308, and/or other applicable law and other applicable law; and

E.  For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests trial by jury of all issues triable by jury pursuant to FED. R. CIV. P. 38.

Dated: September 16, 2013              Respectfully submitted,

/s/ Michael A. Caddell
Michael A. Caddell
Cynthia B. Chapman
Cory S. Fein
**CADDELL & CHAPMAN**
1331 Lamar, Suite 1070
Houston, Texas  77010-3027
Tel: (713) 751-0400
Fax: (713) 751-0906
mac@caddellchapman.com
cbc@caddellchapman.com
csf@caddellchapman.com

Joseph G. Sauder
Matthew D. Schelkopf
Benjamin F. Johns
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
E-mail: JosephSauder@chimicles.com
MatthewSchelkopf@chimicles.com
BFJ@chimicles.com

***Counsel for Plaintiff and the Class***